## NOT FOR PUBLICATION WITHOUT THE
## APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3501-22

IN RE UNION PAVING &
CONSTRUCTION CO., INC.
CONTRACT: ROUTE 7
KEARNY DRAINAGE
IMPROVEMENTS, NJDOT
CONTRACT #002950652,
FEDERAL PROJECT #0007(332).

_____

Submitted December 13, 2023 – Decided January 22, 2024

Before Judges Currier, Firko, and Susswein.

On appeal from the New Jersey Department of Transportation.

Hedinger & Lawless LLC, attorneys for appellant Union Paving & Construction Co., Inc. (Robert Hedinger, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Department of Transportation (Melissa H. Raksa, Assistant Attorney General, of counsel; Morgan Levine Rice, Deputy Attorney General, on the brief).

Florio Perrucci Steinhardt Cappelli Tipton & Taylor, LLC, attorneys for amicus curiae Utility and

Transportation Contractors Association of New Jersey,
Inc. (Louis Cappelli, Jr., on the brief).

PER CURIAM

Union Paving & Construction Company (UPC) appeals from the July 5, 2023 final agency decision of respondent New Jersey Department of Transportation (DOT) rejecting UPC's bid for a federally funded project known as the Route 7 Kearny Drainage Improvements Project (the Project). The DOT rejected UPC's bid because the Federal Highway Administration (FHWA) found that UPC failed to meet the Project's Disadvantaged Business Enterprise (DBE)[1] goal or provide documentation of UPC's good faith efforts to do so. The remaining bids submitted exceeded DOT's estimated costs for the work. The DOT determined that without FHWA's funding, DOT could not award UPC the Project and chose to reject all bids and re-advertise.

---

[1] The DBE program is designed to remedy ongoing discrimination and the continuing effects of past discrimination in federally assisted highway, transit, airport, and highway safety financial assistance transportation contracting markets nationwide. The primary remedial goal and objective of the DBE program is to level the playing field by providing small businesses owned and controlled by socially and economically disadvantaged individuals a fair opportunity to compete for federally funded transportation contracts. Disadvantaged Business Enterprise (DBE) Program, U.S. Dep't of Transportation, https://www.transportation.gov/civil-rights/disadvantaged-business-enterprise (last updated Nov. 25, 2022).

UPC contends the DOT was obligated to award the contract to UPC, abused its discretion in not doing so, and erred by asserting the FHWA had the right to refuse to permit an award to UPC. We granted leave to the Utility and Transportation Contractors Association of New Jersey, Inc., to file an amicus curiae brief, which supports UPC's contentions. After our review in light of UPC's contentions, the facts and applicable principles of law, we affirm.

I.

On May 18 2023, the DOT issued an advertisement for bids for the Project. According to the bid specifications, the Project was intended to address drainage deficiencies and mitigate regular flooding events that compromised the roadway's safety and resulted in closures. The Project is funded from three sources: $98,000,000 from the FHWA; $26,000,000 from a federal infrastructure grant; and $7,000,000 from New Jersey's Transportation Trust Fund. The DOT's May 18, 2023 Notice to Contractors indicated the estimated cost range was between $75,000,001 and $100,000,000; listed work items and quantities; and referred bidders to an electronic bid submission platform—Bid Express[2]—for plans, specifications, addenda, and bidding information. The

---

[2] The Bid Express service is an online information service for bidding provided by Infotech, Inc. It is a two-way service, publishing bid-related information

Notice to Contractors indicated DOT "reserves its right to reject any and/or all bids in accordance with N.J.S.A. 27:7-30[3] and N.J.S.A. 27:7-33."[4]  The Project included a 10% DBE goal because it was partially federally funded.

At a presentation given by the DOT on May 18, 2023, which was also available on Bid Express, the DOT explained the key federal civil rights

_____

from agencies to the bidding community, and allowing online secure bid submission from the bidding community to the agency.  Frequently Asked Questions (FAQs), Bid Express, https://bidx.com (last visited Jan. 11, 2024).

[3]  N.J.S.A. 27:7-30 provides:

> The commissioner may reject any or all bids not in accord with the advertisement of specifications, or for any other irregularity, or may reject any or all bids if the price for work or materials is excessively above the estimated cost, or for any other cause.  The state highway engineer shall prepare a list of the bids, including any rejected and the cause therefor, and the commissioner shall award the contract to the lowest responsible bidder.

[4]  N.J.S.A. 27:7-33 provides:

> The commissioner shall award the contract or reject the bids therefor within [thirty] working days after the bids are received, except that this time limit may be extended by mutual agreement, and all proposal bonds which have been delivered with the bids, except those of the two lowest responsible bidders, shall be returned within [three] working days after such bids are received.  Any and all bids may be rejected when the commissioner determines that it is in the public interest to do so.

4

A-3501-22

requirements, identified DBE subcontracting opportunities, reviewed the DOT's DBE forms, and cautioned there was "no room for errors on the [c]ivil rights forms." The DOT also issued an Advisory Notice explaining common errors and reminded bidders to ensure all forms are "PROPERLY, ACCURATELY, and FULLY COMPLETE." Bidders were advised that the DBE requirements under 49 C.F.R. §§ 26.1 - .109 "applie[d] to this agreement," and reiterated the "DOT reserve[d] its rights to reject any and all bids in accordance with N.J.S.A. 27:7-30 and N.J.S.A. 27:7-33."

DOT's Department of Civil Rights/Affirmative Action (DCRAA) had "sole authority to determine whether the Bidder met the Project's DBE goal or made adequate good faith efforts to do so." DBE submissions were due at the time of the bid, but the Project addendum allowed bidders five additional days to make their DBE submissions.

UPC's bid of $93,908,149.53 was the lowest of the five bids submitted by approximately $6,000,000. UPC submitted its DBE package to the DCRAA. A week later, the DCRAA issued a recommendation not to award the Project to UPC because its DBE showed a commitment of only 3.32% due to deficiencies in its documentation. The DCRAA noted the 6.68% deficit stemmed from the following issues: (1) forms CR-272 (DBE regular dealer/supplier verification)

5

submitted for JMD Building Products, LLC (JMD), and William G. Moore & Son, Inc. (Moore), were incomplete because UPC did not sign them and the type of materials within the worktypes that JMD and Moore would be supplying was not provided; (2) UPC incorrectly indicated Green Earth Solutions, Inc. (Green Earth), would perform tasks it was not certified to perform; (3) UPC failed to list Mendez Trucking, Inc. (Mendez Trucking), on its CR-266 form (schedule of DBE, Emerging Small Business Enterprise, and Small Business Enterprise); and (4) DCRAA was unable to decipher the specific value of work Eastern Landscape, Inc., was certified to perform under the Port Authority's Unified Certification Program requirements.

UPC protested the rejection of its bid and requested an Administrative Reconsideration hearing, pursuant to DOT Standard Specifications and federal regulations, including 49 C.F.R. § 26.53. UPC submitted a letter and documentation to DOT to clarify its DBE plan, demonstrating why its bid should not be rejected. DOT appointed its Assistant Commissioner as the Hearing Officer.

At the one-day Administrative Review Hearing held on June 23, 2023, two representatives testified from the Division on Civil Rights (DCR). They explained the bid information and their reasons for not recommending an award

of the contract to UPC.  The representatives stated the DCR could not verify the amount of each line item attributable to certain building products that JMD sells or leases or whether JMD is a broker for these products. JMD's CR-272 form was not signed by UPC.  Similar deficiencies applied to Moore—the work items were not fully described and UPC did not sign the CR-272 form.

The DCR representatives testified that Green Earth Resolutions was supposed to assist in the disposal of regulated materials, but the company was not certified in trucking or sampling and testing, and the requisite forms for this company were not provided to count towards UPC's DBE goal.  Regarding Eastern Landscaping, the DCR representatives explained the company is not certified to perform tree clearance and tree removal by the Port Authority and was only certified to do tree pruning.

UPC called the various subcontractors' representatives to testify as to their understanding of their "civil rights documents."  UPC's counsel conceded the bid included some "minor" defects, such as unsigned forms, but argued these defects should be "waived."  UPC also conceded it had not submitted signed CR-272 forms.  As to one subcontractor, UPC's counsel explained the failure to submit a completed form was "due to an uploading mistake."

7

Following the testimony and arguments of counsel, the Hearing Officer issued a written decision. As to JMD, the Hearing Officer concluded UPC's failure to sign the CR-272 form was "not fatal" to UPC's bid, and the testimony bore out that the form was otherwise complete. UPC's representative indicated that he signed the CR-272 form on June 12, 2023, the same day he uploaded other civil rights documents to the DCR. Therefore, the Hearing Officer found the mistakes in the documentation could be corrected. The Hearing Officer made similar findings of fact and conclusions of law regarding the work contemplated to be performed by Moore.

Regarding Green Earth, the Hearing Officer determined its representative testified credibly and the improperly listed work to be performed in sampling and analysis was a "typographical error" and "d[id] not [a]ffect the outcome of the bid." However, the Hearing Officer found Green Earth, as a management company for environmental services, was not a certified DBE trucker. The Hearing Officer noted Mendez Trucking may fulfill a portion of the bid for trucking for Green Earth, but UPC's error in not listing Mendez Trucking on its bid forms "cannot be overcome."

The Hearing Officer determined Eastern Landscaping could not perform tree removal and other landscaping items because it was only certified to

perform tree pruning. However, the Hearing Officer concluded Eastern Landscaping was nonetheless certified to perform the work, "even if for other subcodes." The Hearing Officer noted UPC did not submit any good faith efforts along with its bid.

After making calculations based on his decision, the Hearing Officer determined UPC's DBE participation is 9.83% out of 10%. In addition, the Hearing Officer concluded he did not need evidence to examine whether UPC engaged in good faith efforts because he found "the participation is reasonable and not overly deficient to warrant the analysis at .17% deficiency." The Hearing Officer explained a bidder can meet the DBE goal by documenting commitments for participation by DBE firms sufficient for this purpose, or if the bidder does not meet that goal, document good faith efforts. The Hearing Officer transmitted his decision to the Division of Procurement to process the award of the Project contract to UPC.

On June 28, 2023, DOT sent an email to FHWA with the following documents: (1) a letter requesting FHWA concurrence; (2) bid analysis; (3) bid tabulation; (4) bid memo; (5) engineer's estimate; (6) addendum certification letter; (7) civil rights recommendation; (8) final agency decision to award; (9)

integrity oversight monitoring; (10) certified bid proposal; and (11) certificate of award.

The FHWA rejected the Administration Reconsideration decision and declined to concur in the award to UPC because it determined UPC's bid did not meet the 10% DBE goal or document UPC's good faith efforts to meet the DBE goal. Because DOT could not award the Project without the FHWA's concurrence, DOT advised UPC of its decision on July 5, 2023, and stated the FHWA had determined that UPC "did not meet the DBE goal nor did the apparent low bidder provide good faith effort documentation regarding its efforts to meet the DBE goal." The DOT's letter also informed UPC the remaining bids exceeded DOT's estimated costs for the work to be performed, and in accordance with N.J.S.A. 27:7-30 and N.J.A.C. 16:44-7.4, the DOT determined it was in the best interest of the State to reject all bids received and to re-advertise.

On July 6, 2023, UPC requested DOT stay any actions in furtherance of the rejection of UPC's bid or a rebid. On July 11, 2023, UPC sought permission in this court to file an emergent motion seeking to adopt the Hearing Officer's decision and mandate that DOT proceed in accordance with that decision. UPC contended the FHWA had no standing or legal authority to interfere with DOT's

decision, which is a final agency decision. We denied UPC's application the next day, noting that DOT had "rejected all bids and will not make a contract award to any other bidder."

On July 14, 2023, DOT denied UPC's request for a stay in a letter advising:

> [T]he FHWA determined that UPC failed to meet the project's [DBE] goal or provide documentation of good faith efforts to do so. As a NHPP-funded PoDI project, the FHWA's support is critical. Because of substantially higher bids submitted by alternate bidders, the . . . DOT determined that it was in the best interest of the State and public to reject all bids and re-advertise.

On August 10, 2023, we granted UPC's motion for a stay and to accelerate the appeal.

On appeal, UPC argues the Hearing Officer's decision was a final agency decision, which obligated DOT to award the contract to UPC. In addition, UPC contends DOT's decision to reject its bid because the FHWA would not concur in the award to UPC and overturn a DBE compliance finding was arbitrary, capricious, and unreasonable because the DOT's decision is contrary to the goal of encouraging participation in the public bidding process and renders the administrative hearing process "a sham." We disagree.

II.

11

We use a deferential standard of review for governmental decisions in bidding cases. In re Protest of Award of On-Line Games Prod. & Operation Servs. Cont., Bid No. 95-X-20175, 279 N.J. Super. 566, 590-93 (App. Div. 1995). "The standard of review on the matter of whether a bid on a local public contract conforms to specifications . . . is whether the decision was arbitrary, unreasonable, or capricious." Ibid. (citing Palamar Constr. Inc. v. Twp. of Pennsauken, 196 N.J. Super. 241, 250 (App. Div. 1983); Stano v. Soldo Constr. Co., 187 N.J. Super. 524, 534 (App. Div. 1983)). If a public entity's decision is grounded rationally in the record and does not violate the applicable law, it must be upheld. Ibid. We will not interfere with the exercise of an agency's discretion in awarding a contract or rejecting a bidder "in the absence of bad faith, corruption, fraud or gross abuse of discretion." Com. Cleaning Corp. v. Sullivan, 47 N.J. 539, 549 (1966).

The DOT Commissioner has the authority to "advertise for bids on the work and materials covered by the plans and specifications for each project," N.J.S.A. 27:7-29, and must "award the contract to the lowest responsible bidder." N.J.S.A. 27:7-30. "The lowest responsible bidder on a local public contract must not only be deemed responsible but must submit the lowest bid which conforms with the contract specifications." On-Line Games, 279 N.J.

Super. at 590 (citing <u>Meadowbrook Carting Co. v. Borough of Island Heights</u>, 138 N.J. 307, 313 (1994)). The contract specifications apply equally to all bidders, and any material departure from the bid specifications renders bids nonconforming and invalid. <u>Hall Constr. Co. Inc. v. N.J. Sports & Exposition Auth.</u>, 295 N.J. Super. 629, 635 (App. Div. 1996). Material conditions cannot be waived by the contracting authority, but minor or inconsequential discrepancies and technical omissions may be waived. <u>Meadowbrook</u>, 138 N.J. at 314.

Thus, when a contracting agency makes a determination regarding a bid's conformity with an advertisement, "[t]he preliminary inquiry is whether the bid deviates from the" advertisement. <u>On-Line Games</u>, 279 N.J. Super. at 594. If there is a deviation, the court then determines whether the deviation is material and can be waived. <u>Ibid.</u>

49 C.F.R. § 26.53(a) provides that when a DBE contract goal is established, as here, the contract <u>must</u> only be awarded to a bidder who makes a good faith effort to meet that goal. A bidder <u>must</u> be found to have made a good faith effort if the bidder does either of the following:

> (1) Documents that it has obtained enough DBE participation to meet the goal; or

13

(2) Documents that it made adequate good faith efforts to meet the goal, even though it did not succeed in obtaining enough DBE participation to do so. If the bidder/offeror does document adequate good faith efforts, you must not deny award of the contract on the basis that the bidder/offeror failed to meet the goal.

[Ibid.]

If a bidder is found to have failed to meet the requirements of § 26.53(a), then it <u>must</u>, before the contract is awarded, be provided an opportunity for administrative reconsideration. 49 C.F.R. § 26.53(d). Administrative reconsideration entails the following:

(1) As part of this reconsideration, the bidder/offeror must have the opportunity to provide written documentation or argument concerning the issue of whether it met the goal or made adequate good faith efforts to do so.

(2) [The] decision on reconsideration must be made by an official who did not take part in the original determination that the bidder/offeror failed to meet the goal or make adequate good faith efforts to do so.

(3) The bidder/offeror must have the opportunity to meet in person with [the] reconsideration official to discuss the issue of whether it met the goal or made adequate good faith efforts to do so.

(4) [T]he bidder/offeror [must be provided] a written decision on reconsideration, explaining the basis for finding that the bidder did or did not meet the goal or make adequate good faith efforts to do so.

(5) The result of the reconsideration process is not administratively appealable to the [DOT].

[Ibid.]

The DCRAA recommended not to award the Project to UPC because of the deficiencies in its required DBE participation documentation, and its failure to show good faith efforts. Consequently, UPC received the administration reconsideration hearing it was entitled to. The Hearing Officer found UPC's DBE participation goal was 9.83% and therefore, it was close enough to the Project's established 10% DBE goal to advise the Division of Procurement to award the Project to UPC.

On appeal, UPC argues the Hearing Officer's decision is not advisory in nature, was a final agency decision, and neither DOT nor FHWA had the right to ignore or overrule the Hearing Officer's decision.

We are satisfied the DOT could not award the Project contract without the FHWA's concurrence. We are unpersuaded by UPC's argument that neither the DOT nor the FHWA had the right to disregard the Hearing Officer's decision— which was not a contract award. To the contrary, 23 C.F.R. § 635.114, which deals with FHWA contract procedures, specifically provides:

> (b) The State DOT shall formally request concurrence by the Division Administrator in the award of all Federal-aid contracts. Concurrence in award by the

Division Administrator is a prerequisite to Federal participation in construction costs and is considered as authority to proceed with construction, unless specifically stated otherwise. Concurrence in award shall be formally approved and shall only be given after receipt and review of the tabulation of bids.

This CFR section underscores the DOT was required to seek the FHWA's concurrence for this largely federally funded project—$98,000,000 of the $131,000,000 projected costs—and that the FHWA did in fact have the authority to preclude awarding the project to UPC. Furthermore, the 2019 Standard Specifications for Road and Bridge Construction for the Project contains "Section 103—Award and Execution of Contract"—which states, "[DOT] may conditionally award the Contract pending the approval of the Federal Government, another State's governmental body, or private party."

Moreover, Section E of Form DC-86F—the Certificate of Award for the Project—requires the Deputy Director of the Capital Program Coordination to sign and certify DOT received the FHWA's concurrence. In light of these mandated procedures, we are satisfied DOT did not act arbitrarily in denying the bid award to UPC when its bid did not comply with the 10% DBE participation requirement. We discern no basis to disturb the DOT's decision to reject UPC's and all other bids and re-advertise the Project.

A-3501-22

In light of our determination to affirm DOT's decision, we need not address UPC's argument that DOT's refusal to abide by the Hearing Officer's decision is contrary to the goal of encouraging participation in the public bidding process. To the extent we have not addressed UPC's remaining arguments, we conclude they lack sufficient merit to discuss in a written opinion. R. 2:11-3(1)(E).

Affirmed. The August 10, 2023 stay order is vacated.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION